You may proceed. Thank you. May it please the court, my name is Neil Fox. I represent the appellant, Bradley Peters. I'm going to be reserving two minutes for rebuttal. Just a few years before she ended up as a witness against Mr. Peters in state court in his trial for sexual abuse, the main detective in the case, Tanya Gardner, leaked information about a cold homicide case. Her boyfriend, one of the chief suspects, and then lied about it during the internal investigation. The failure of the state to disclose this history to the defense was harmful to Mr. Peters, and we're asking that you reverse the district court and grant the writ. Mr. Peters' case was a classic credibility contest. The jury had to decide whether there was a reason to doubt JP's allegations, allegations that Mr. Peters vehemently denied. Credibility was central because there was no forensic evidence. The rape test kit had been destroyed, in part because Detective Gardner failed to secure it and have it tested. There was also an allegation by JP that Vaseline had been used. And even though Mr. Peters' fingernails were clipped when he was arrested and the bedsheets were taken into evidence, nothing was ever submitted for testing. But what happened in this case is that the state puffed up Detective Gardner's- Is there any reason to think that those things would have been exculpatory? Well, what we do know is that the defense wanted those things tested. I think the answer to my question is no, right? Well, we don't know. We don't know. I mean, so the answer is we don't know they are. This is a situation where evidence is lost or- Or not tested. You know, for whatever, not tested, you know, well, it's lost in the sense of the test cannot come in. It's gone. And we don't know whether it would have been exculpatory. It could well have been inculpatory, right? It could have been. So the test there is bad faith? Well, the defense wanted to argue, made an argument before trial to dismiss the case. I mean, this is not a case where known, just we're on the same track. This is not a case where known exculpatory evidence is not presented. That's- Or known exculpatory evidence is not presented and lost. That's correct. But everything pre-trial was based upon the assumption that Detective Gardner was just a normal police officer who negligently didn't secure the evidence. And therefore, in fact, I think defense counsel argued that bad faith requires a more venal motive. I think there was a terminology that he used. Had the defense been told about Detective Gardner's background, we know that defense counsel would have impeached her and brought out in front of the trial judge an argument that she did act in bad faith when she failed to secure the evidence. But she's not, was not a precipient witness. She was just handling the materials. The materials ended up not being tested, thrown away, lost, or whatever. But she's not a witness to any of the events that are critical in the trial. No, but she gave opinions to the jury about expert opinions, I would submit, as to the lack of value of forensic testing. So the state put her on, puffed up her credentials, talked about the five or 600 case, sexual assault cases that she had engaged in. And then on direct, not even waiting for cross, but on direct, asked questions about, well, why didn't you test the sheets, for instance? And she gave opinions that it wouldn't have mattered. On cross-examination, defense counsel went down the path of arguing with her about the significance of testing, and she gave opinions that, in her opinion, as an expert police officer, it wouldn't have mattered. I submit that when you, when the state presents a police officer as an expert, puffs up their credentials, talks about their training and experience, and then not to disclose what the true training and experience is. This is a police officer who can't be trusted. Everyone assumed, at trial, that this was just a normal police officer. But she had just a few... I mean, they should have disclosed it, no doubt about it. But it's not like she fabricated evidence in a sexual abuse case. I mean, she did have this misconduct, which sort of generally has doubts on her credibility, but it's not the kind of misconduct went specifically to her expertise. Well, in Milka v. Ryan, where there was misconduct related to Fifth Amendment issues, there was also an allegation that the detective had sexually assaulted a woman that he had stopped in a traffic stop, and the court found that was significant Brady material as well. It was added in to the other issues about his Fifth Amendment violations. I think I'm agreeing with what Judge Koczynski has just said. It seems to me this is clearly Brady material in the sense that it should have been revealed, and that it was wrong not to reveal it. So my question really goes to how big an impact that had. How strong was the evidence? I know we did not have forensic evidence. We had a fair amount of testimonial evidence from the victim, who was fairly old by now. It's not one of these, you know, four-year-old children. So what am I supposed to do with that? Well, sometimes... I mean, there's no expert testimony in this case, but sometimes children who are 15 and 16 years old... They're better liars than the young ones, yeah. But you have a situation where Mr. Peters denied committing the crime. And I'm thinking about United States v. Olson, where, from what I can tell, Mr. Olson never testified at the trial. So he argued that he didn't have the intent. But here you actually had testimony from Mr. Peters where he vehemently denied the allegations against him. But it's kind of a funny denial. It's various forms of activity that are, in his view, innocent. And we have the mother coming home, sort of catching them or catching him. I mean, this is not your sort of... What did she said with nobody but the victim and the perpetrator, or alleged perpetrator? Well, he denies the most salacious allegations at his ex-wife. So you do have that. And then also, JP initially said nothing happened. Sure. So you have that. Then you have, on the way to the scales, you have Detective Gardner making far-reaching opinions about the lack of value of forensic testing. And they go on for pages in the transcript between her and the defence attorney about that. And so she put basically her thumb on the scales and it tilted in favour of the State. Had this evidence been disclosed, the whole tone and tenor of the cross-examination would have been completely different. The whole tone and tenor of the entire case would have been different, from the Youngblood motion before trial to the cross-examination to the closing argument. But this would have been more generalised impeachment of her character or expertise in the past, as opposed to showing that she lost evidence or destroyed evidence or anything that was more directly related to the evidence in this case, wasn't it? Well, Your Honour, a police officer who is willing to leak information about a homicide to her boyfriend and then lie about it, and then only get 30 hours of suspension, it really completely changes everything that this officer is going to say in court and everything that the Brenton Police Department did. With that, I'll reserve my final time for rebuttal. Thank you. Thank you. We'll hear from the other side. May it please the Court, John Sampson, Assistant Attorney General for the appellee. The district court correctly denied relief in this case because the state court adjudication of the Brady claim was not an unreasonable application of Supreme Court precedent. And there are two ways that Petitioner claims that this evidence was Brady material that could have affected the outcome of the trial. One is going to the untested rape kit. And Petitioner claims that that evidence regarding Detective Gardner's misbehavior in an unrelated case could have shown bad faith. But the record shows that the rape kit was destroyed inadvertently by the hospital staff because of a miscommunication. Dr. Sugar testified directly that it was her mistake. She is the one who failed to communicate to the people holding the rape kit in the hospital. I'm not exactly sure. Maybe I should have asked that opposing counsel what the significance of the rape kit would have been. There was no claim of sexual... I don't know how to put it politely, but I thought it was... The charge was digital penetration. It was. Using... So would the rape kit reveal anything? Their argument... I'm just trying to understand the significance. Yes, Your Honor. Really, it would not have revealed any bodily fluids, semen, blood, those type of items that you would normally get in a... Just to be specific, rape kits test for bodily fluids. They don't test for tearing or the kind of thing that digital penetration would leave, right? That's my understanding, Your Honor. How about Vaseline? There was a discussion of Vaseline. You may not know the answer to this, in which case... Obviously, you've handled many more such cases than I do, so... Your Honor, all I can say is that the petitioner's argument is that if the kit was tested, they could have tested it for Vaseline, but I'm not sure there's anything in the record that shows that the tests that would have been conducted would have been to determine whether Vaseline was present. There was only a little bit of discussion in the record about what is tested, and I believe that Dr. Click and Dr. Sugar both testified that the kit, if it had been tested, would have been tested for bodily fluid type... Bodily fluid types, okay. Yes, Your Honor. But there is no evidence of bad faith. The impeachment evidence, it's not as if it was... Well, bad faith, let me come back to that one. Was it known to the state that Detective Gardner had this disciplinary record? It was known certainly to the police, so it is evidence that should have been disclosed. It's 2 plus 2 makes 4, that that evidence was relevant to cross-examination, and somebody didn't reveal it, and somebody knew it who knew they had a duty to reveal it. I don't know how you define bad faith, but this sounds like it to me. Well, Your Honor, the bad faith... I'm not accusing the prosecutor necessarily, but if people in the police force know this case is going forward, know this record of this detective, and failed to reveal it to the prosecutor, that strikes me as bad faith on the part of the police. Your Honor, the bad faith, though, has to go to the actual destruction of the evidence. Oh, I'm not talking about destruction of the evidence. I'm talking about the failure to reveal the information with which the detective could have been impeached. I agree. In a question of Brady, whether the prosecution or the police should have disclosed the evidence, bad faith is irrelevant in that issue. I know that that's so, but I thought you were telling me that there's no bad faith with respect to what the Brady violation shows. No, Your Honor. I was talking about the destruction of evidence. There's no bad faith as to that. And the state court denied the Brady claim itself because of a lack of materiality. They found that the impeachment evidence would not have affected either the... And there were two ways Petitioner argued in state court. One, it would have showed bad faith in the destruction of the rape. Let me ask you this, then. Are you telling me that there was no obligation to turn over that information? No, Your Honor. Well, then what are you saying when there's no materiality and no Brady violation? That is to say, you're saying that there was a duty to do it, the duty was violated, but there's no Brady violation because it was not material, let's just say harmless? Yes, Your Honor. There was not a reasonable probability it would have affected the outcome of the trial. Okay, but you're not arguing that there was no duty to hand it over? No, Your Honor. Clearly, impeachment evidence that could have been used to further impeach Detective Gardner. But she was... She was a law enforcement officer who leaked information, critical information, about a murder investigation. Why wouldn't that have impacted the jury's consideration of her testimony? Your Honor, for a couple reasons. One is she was extensively impeached because of her conduct in this case. In fact, defense counsel, at page 680 of the excerpt of the record, brought out the fact that she collected all this evidence, but then submitted none of it for any testing. But that sloppiness, not intentional conduct-like, was the case with her boyfriend. But, Your Honor, in that case with her boyfriend, it was not... First of all, it was not this case. So you're assuming that because she did one bad act, she's gonna do a bad act in every case. No, I'm just assuming that a jury would want to know that in assessing her credibility. If she was impeached on other issues, she surely would have been impeached on this issue. And I would agree she could be impeached on this issue, but then you have to look at what was her role in this case. And she was really simply a person who went out and collected forensic evidence that was never tested, and this was not a forensic evidence case. The key evidence in this case was J.P.'s direct testimony, where she repeatedly stated clearly the abuse that she suffered at the hands of Mr. Peters. That was the persuasive evidence. And if you view the entire trial, the impeachment evidence that should... I agree, should have been disclosed to the defense and could have been used by the defense, it would not have affected the jury's verdict. There's not a reasonable probability. And again, this is a case under AEDPA, so not only must this court find a constitutional error, but must find the state court's adjudication of the claim was unreasonable, which Petitioner has not shown in this case. Unless the court has any further questions, I would rest on our briefing. Thank you. Thank you. I believe you have close to two minutes. With regards to Vaseline, the state court record has an affidavit in it at ER 139 from Dr. Philip Welch, who testified in his affidavit that Vaseline is detectable by forensic means for at least a few days after application, and certainly for six hours between the alleged event and the exam. So the materiality of the rape test kit is that it could have been tested for the presence of Vaseline. I mean, there's no doubt... I mean, I'm convinced that it could have been detected, but the question is whether a standard rape kit tests for Vaseline. It doesn't test for everything. Well, it's a swab, and I think that was the testimony from Detective Gardner. It's a swab, and then you have the swab and you could look at it later to test for something. And if the defense says, hey... Well, I don't mean to argue with you at all, but let me just tell you what my understanding is. Maybe I'm wrong about this, you can point out to me. I thought what happens with a test kit, whatever the test kit is, is you... you do the swab or extract the sample or whatever it is, and then send it for testing, and it tests for specific things. It doesn't test for everything. And at that point, the thing, the material that's being tested, the swab or the stool sample or the urine sample, whatever the thing is, is destroyed. Well, maybe not. So a standard test kit would test for certain things, and that would be the end of it. Maybe it wouldn't be destroyed. They would keep parts of the sample and it could be tested at some later point. But there's nothing in the record that suggests that that would have happened. It's one thing if they said, look, we have a test kit, we're going to test it for Vaseline. You know, but just processing a standard test kit seems to me... Unless you have other evidence of this sort. If the samples are not destroyed, then they could be preserved for further testing when it becomes material. I think I've run out of my time. Thank you. Thank you. We'll next hear an argument in Gerns versus Warner.
judges: Kozinski, W. Fletcher, Tunheim